UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                                      |
MARK TAYLOR                                           |
                                                      |
                    Plaintiff,                        |
                                                      |    NOT FOR PUBLICATION
          -against-                                   |    **MEMORANDUM & ORDER**
                                                      |
                                                      |    05-CV-5250 (CBA)
ECKERD PHARMACY                                       |
                                                      |
                    Defendant.                        |
                                                      |
------------------------------------------------------X
AMON, United States District Judge

Plaintiff Mark Taylor has filed *pro se* a suit against defendant Maxi Drugs, d/b/a Brooks Eckerd Pharmacy ("Eckerd"), alleging that he was harassed and discriminated against during his employment with Eckerd, and ultimately suspended and not re-hired because of his race and national origin. The defendant has filed a motion for summary judgment. For the reasons set forth below, defendant's motion is granted.

**I.     Background**

Taylor was hired by Eckerd on November 9, 2001 to work as a cashier at Eckerd Store 5556 in Manhattan. In 2002, Taylor worked as a store cashier at Store 5529 in Queens. He was transferred, at his request, to Store 5560 in Bensonhurst in December of that year. In 2003, Taylor was cited for various disciplinary problems related to his performance and had several run-ins with co-workers. In addition, he made several internal complaints.

In late August 2003, Itan Okhiria, a Human Resources Specialist for Eckerd, received a phone call from Jason Rolon, store manager at Eckerd Store 5560, where Taylor was working. She was informed that the New York Police Department ("NYPD") had come to the store to

1

arrest Taylor for allegedly assaulting a pregnant former co-worker. On August 23, 2003, Taylor was escorted from Store 5560 by the NYPD and was later arrested for aggravated harassment. Rolon informed Okhiria of the arrest, and Okhiria spoke to the NYPD regarding Taylor.

In accordance with Eckerd policy, Okhiria suspended Taylor pending the outcome of the criminal charges against him. After Taylor was charged and released from jail, he spoke with Okhiria, who informed him of his suspension. Okhiria also told Taylor to provide her with written documentation of the outcome of the criminal matter, which was required before he could return to work. Taylor agreed. In addition, Okhiria informed Taylor that if he did not work for a period of time, approximately 90 days, Eckerd's computer system would consider him automatically terminated.

In January 2004, Taylor called Okhiria and informed her that the criminal charges had been dismissed. However, because Taylor had not worked for more than the specified period, he had already been terminated by the Eckerd computer system. Okhiria informed Taylor that to be re-hired, he would have to submit documentation verifying that the criminal charges had been dismissed. Taylor claims to have faxed this information on January 30, 2004 and again on February 17, 2004. However, after each of these occasions, Okhiria informed him that she had not received the fax. Eckerd did not receive any such documentation until after this litigation had commenced.

Between January and April of 2004, Taylor repeatedly contacted Okhiria and various Eckerd employees seeking to be re-hired. Okhiria stated that Taylor's actions were "unprofessional," "bizarre," and "threatening." She believed that Taylor was obsessed with returning to Eckerd and that he would not stop until he was re-hired. On at least one occasion, she was afraid that Taylor would attack her. In addition, Okhiria stated that she received reports

2

from store managers of store associates' complaints that Taylor visited the stores, interrupted their work, and made them feel uncomfortable and/or scared. In April 2004, Okhiria expressed concerns about Taylor's conduct to her supervisor, Ivonne Gomez, and expressed concern for the safety of Eckerd employees. In April or May of 2004, Okhiria recommended to Gomez that Taylor not be hired by Eckerd in any capacity because of his conduct following his suspension, and Eckerd management agreed. On August 19, 2004, when Taylor applied for a position with another Eckerd store, he was informed by the manager that Eckerd had decided not to hire him.

On May 5, 2005, Taylor filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that he was discriminated against because of his race and national origin in connection with his employment at Store 5560, his suspension in August 2003, and the decision not to re-hire him, which was communicated to him in August of 2004. (Exh. 7.) Taylor was granted a right-to-sue letter on August 25, 2005 and commenced this lawsuit on November 8, 2005, asserting discrimination on the basis of race and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17. Taylor asserts that he was discriminated against during his time working at Store 5560, when he was suspended in August of 2003, and when Eckerd decided not to re-hire him

**A. Discussion**

**1. Standard of Review**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Belfi v. Prendergast, 191 F.3d 129, 135 (2d Cir. 1999). The Court's function is not to resolve

disputed issues of fact but only to determine whether there is a genuine issue to be tried. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The court is required to view the evidence in the light most favorable to the nonmoving party, see Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970), and must construe the *pro se* plaintiff's claims liberally in deciding the motion for summary judgment. See Sawyer v. Am. Fed'n of Gov't Employees, AFL-CIO, 180 F.3d 31, 36 (2d Cir. 1999) (citing Haines v. Kerner, 404 U.S. 519, 520 (1972)). Nevertheless, the non-moving party cannot rest on "mere allegations or denials" but must instead "set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Nat'l Westminster Bank USA v. Ross, 676 F. Supp. 48, 51 (S.D.N.Y. 1987) ("Speculation, conclusory allegations, and mere denials are not enough to raise genuine issues of fact."). No genuine issue exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted).

Under the Local Rules of the United States District Court for the Southern and Eastern District, summary judgment may be granted in a *pro se* case when (1) the plaintiff has received adequate notice that failure to respond may result in dismissal of the case, and (2) the court determines that the facts as to which there is no genuine dispute show that the moving party is entitled to a judgment as a matter of law. See Champion v. Artuz, 76 F.3d 483, 486 (2d Cir. 1996); see also Fed. R. Civ. P. 56(e). Taylor received notice informing plaintiff of the nature and consequences of summary judgment as required under Vital v. Interfaith Medical. Ctr., 168 F.3d 615, 620-21 (2d Cir. 1999). Although Taylor did not file a 56.1 statement, he submitted an opposition in response to the motion for summary judgment.

4

**2. Any claims prior to July 9, 2004 are time-barred**

Before pursuing an action under Title VII, a plaintiff must first file a charge of discrimination with the EEOC. A charge of discrimination must be filed within 180 days of the alleged unlawful employment practice occurred, unless there is a state agency with authority to grant or seek relief from such discriminatory practice, in which case the charge must be filed within 300 days after the alleged unlawful employment practice occurred. 42 U.S.C. §§ 2000e-5(e)(1). In New York, which has such an agency, a charge of discrimination must be filed with the EEOC within 300 days. See Pikulin v. City Univ. of New York, 176 F.3d 598, 599 (2d. Cir. 1999); Brown v. New York City Housing Authority, 2006 WL 1378599 at *2 (S.D.N.Y. May 17, 2006) ("In New York and other states with fair employment agencies, charges pursuant to Title VII must filed with the EEOC within 300 days of the alleged discriminatory acts."). Taylor filed his EEOC charge on May 5, 2005. Accordingly, all claims related to incidents prior to July 9, 2004 are time-barred. (Def. 56.1 St. at ¶ 37, Exh. 7.) Thus Taylor allegations of discrimination during his employment at Store 5560 are time-barred. Similarly, Taylor's assertion that his August 2003 suspension was discriminatory is time-barred.[1] However, Taylor's allegations regarding Eckard's decision not to re-hire him in August 2004 are properly before the Court, and are addressed below.

**3. Taylor's claims fail as a matter of law**

In order to make out a prima facie case of discrimination based upon a suspension or other adverse employment action, a plaintiff must establish: (1) he is a member of a protected

---

[1] For essentially the same reasons outlined herein, Taylor fails to make out a claim of discrimination even if these allegations were not time-barred.

class; (2) his job performance was satisfactory; (3) he suffered an adverse employment action; and (4) the action occurred under conditions giving rise to an inference of discrimination. Demoret v. Zegarelli, 451 F.3d 140, 151 (2d Cir. 2006) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). Similarly, in order to make out a prima facie case of discriminatory failure to hire, a plaintiff must show that: (1) he is a member of a protected class; (2) he was qualified for the job; (3) he was rejected for the position; and (4) the action occurred under conditions giving rise to an inference of discrimination. Terry v. Ashcroft, 336 F.3d 128, 137-38 (2d Cir. 2003).

If the plaintiff makes out a prima facie case of discrimination, and the defendant proffers a legitimate, nondiscriminatory reason for its action, the McDonnell Douglas burden shifting drops away. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142-43 (2000). The question then becomes whether the evidence, viewed in the light most favorable to the plaintiff, is sufficient to sustain a reasonable finding that the employer's action was motivated at least in part by discrimination. Tomassi v. Insignia Fin. Group Inc., 478 F.3d 111, 114-15 (2d Cir. 2007). The plaintiff, once the employer produces sufficient evidence to support a non-discriminatory explanation for its decision, must be afforded the "opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Reeves, 530 U.S. at 143 (citation omitted).

Taylor contends that he was discriminated against based on his race and national origin in his August 2004 effort to be re-hired for a position with Eckerd. He appears to argue that he should not have been terminated and should have been automatically reinstated upon the dismissal of his criminal case. However, regardless of whether Eckerd's decision not to employ

6

Taylor is characterized as a decision not to re-hire him, a decision not to reinstate him after his suspension, or a decision to terminate him, Taylor fails to make out a prima facie case of discrimination, as he has not established that the decision took place under circumstances giving rise to an inference of discrimination. Although Taylor asserts that he was not re-hired because he was African-American, as opposed to an African born outside the United States, he has not presented any evidence of similarly situated employees who were not African-American and who were treated more favorably. See, e.g., Norville v. Staten Island Univ. Hosp., 196 F.3d 89, 95 (2d Cir. 1999) (inference of discrimination arises when individual of one race treated less favorably than those of another race who are similarly situated). In addition, Okhiria, the person who made the decision not to re-hire Taylor, is African-American and was born and raised in the United States. (Def. 56.1 St. at ¶ 12.) In sum, Taylor has presented not a shred of evidence suggesting that Eckerd's decision was motivated by his race or national origin.

Even if he had established a prima facie case, Eckerd has proffered a legitimate, non-discriminatory reason for declining to re-hire Taylor, namely his failure to provide Eckerd with documentation regarding the dismissal of his charges and his repeated inappropriate conduct in interactions with Eckerd employees. Under Eckerd policy, any employee charged with a crime of violent nature is suspended and may only be reinstated or re-hired upon providing verification of the outcome of the criminal charges. Okhiria informed Taylor that in order to be re-instated following his suspension, he was required to submit documentation verifying that the criminal charges for which he had been arrested were dismissed. (Pl. Dep. at 218.) Okhiria stated that she did not receive Taylor's two attempts to fax her this information. (56.1 St. at ¶ 24.) Taylor admits that Okhiria informed him of this, and that she again requested the documentation. (Pl.

7

Dep. at 218-33.) However, Okhiria never received any written documentation from Taylor. Accordingly, under Eckerd policy, Taylor could not be re-hired or re-instated. See Thornley v. Penton Publishing, Inc., 104 F.3d 26, 29 (2d Cir. 1997) ("[B]eing "qualified" refers to the criteria the employer has specified for the position . . . [and w]hether job performance was satisfactory depends on the employer's criteria for the performance of the job-not the standards that may seem reasonable to the jury or judge.").

In addition, following the dismissal of his criminal charges, Eckard offered evidence that Taylor repeatedly exhibited angry, threatening, and unprofessional behavior in front of Okhiria and other employees. Taylor repeatedly called and visited Okhiria, asking when he could return to work. Okhiria stated that on at least one occasion, he became angry and she feared for her physical safety. She also stated that she received reports from store managers that store associates complained that Taylor visited the stores, interrupted their jobs, and behaved in a manner that made them feel uncomfortable and/or scared. Although Taylor appears to challenge the factual characterization of his interactions with the store managers and associates, he does not genuinely dispute that Okhiria was told those things other than to argue that there are no records of the comments. Based on Taylor's behavior, Okhiria recommended to management that Taylor not be re-hired in any capacity. Management agreed, and it was because of this decision that Taylor was not re-hired in August 2004.[2]

---

[2] Eckerd also notes that when Taylor was arrested, the NYPD informed Eckerd that Taylor had a lengthy criminal history, including felony and misdemeanor convictions. Taylor had failed to include that information in his initial application for employment with Eckerd, even though the form specifically asked about the applicant's criminal history. (Pl. Dep. at 260-75).

Taylor fails to establish that defendant's legitimate, non-discriminatory reasons for declining to re-hire or reinstate him are pretextual. In his response to the defendant's motion, Taylor asserts that it was his idea to provide Eckerd with documentation of the dismissal of the criminal charges, and that he faxed the documentation twice. (Pl. Br. at 8.) However, Taylor, as noted above, does not dispute that Okhiria informed him, after the second fax, that he had not received the information, nor does he assert that he attempted to provide Okhiria with the documentation on any of the several occasions when he was in her presence. (See. Def. 56.1 St. at ¶¶ 21-24; Pl. Dep. at 218-33; Okhiria Aff. at ¶¶ 11, 14.) In addition, with respect to his conduct between January and April 2004, Taylor admits that he was in contact with Okhiria during this time and that he visited Eckerd stores to submit his application to be re-hired. However, Taylor disagrees with Okhiria's characterization of his discussions with her, and states that he "has only called Human Resources and has spoken of the accomplishments of his work performance only and had no intention to brag." (Pl. Br. at 9.) However, "[i]t is not enough . . . to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 147 (2000) (quoting St. Mary's Honor Center v. Hicks, 509 U.S. 502, 519 (1993)). In this case, Taylor has presented no evidence giving rise to an inference that Eckerd intentionally discriminated against him on the basis of his race or national origin, nor has he presented any evidence that would cast doubt on Eckerd's legitimate explanation for its decision not to employ him. Taylor has not presented sufficient evidence to sustain a reasonable finding that the employer's action was motivated at least in part by discrimination. Accordingly, this Court grants defendant's motion for summary judgment. Tomassi, 478 F.3d at 114-15.

9

## CONCLUSION

For the reasons set forth herein, the defendant's motion for summary judgment is granted. The Clerk of the Court is directed to enter judgment in accordance with this Order and to close the case.

SO ORDERED.

Dated: Brooklyn, New York
      September 26, 2007

                                    Carol Bagley Amon
                                    United States District Judge